1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney
2  MICHELLE LO (NYRN 4325163)
   Chief, Civil Division
3  MICHAEL A. KEOUGH (NYRN 5199666)
   VALERIE E. SMITH (NYRN 5112164)
4  Assistant United States Attorneys

5       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
6       Telephone: (415) 436-6878
        Fax: (415) 436-7234
7       michael.keough@usdoj.gov
        valerie.smith2@usdoj.gov
8
   *Attorneys for Defendant*
9  *United States of America*

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                    SAN JOSE DIVISION

13
   Ms. R.H.; S.M.R., a minor child; J.M.R., a      )  Case No. 23-cv-5793-BLF
14 minor child,                                     )
                                                    )  **NOTICE OF MOTION AND MOTION TO**
15          Plaintiffs,                             )  **DISMISS**
                                                    )
16      v.                                          )
                                                    )
17 UNITED STATES OF AMERICA,                        )
                                                    )
18          Defendant.                              )
                                                    )
19 _____              )

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

## <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION ....................................................................................................1

RELIEF SOUGHT .........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.      STATEMENT OF ISSUES TO BE DECIDED .....................................................1

II.     INTRODUCTION ................................................................................................1

III.    FACTUAL AND PROCEDURAL BACKGROUND ...........................................3

       A.     Statutory Framework for Immigration Custody of Unaccompanied Minors .......................3

       B.     Flores Agreement Requirements ........................................................4

       C.     Detention, Separation, and Reunification of Plaintiffs ..............................5

       D.     Plaintiffs' Complaint ........................................................................6

IV.    LEGAL STANDARD .........................................................................................6

       A.     Federal Rule of Civil Procedure 12(b)(1) .............................................6

       B.     Federal Rule of Civil Procedure 12(b)(6) .............................................7

V.      ARGUMENT .......................................................................................................8

       A.     Sovereign Immunity Has Not Been Waived For Plaintiffs' Claims Based on Injuries Suffered in a Foreign Country, Based on the Acts or Omissions of Independent Contractors, or For Which There Is No Private Person Analogue ................8

           1.    No Private Person Analogue ..................................................8

           2.    The Discretionary Function Exception Bars Plaintiffs' Claim for Negligent Supervision ........................................................10

           3.    Ms. R.H.'s Claims Are Partially Barred by the Foreign Country Exception ......................................................................13

           4.    Independent Contractor Exception ........................................14

       B.     Plaintiffs Have Failed to State a Claim for Negligent Infliction of Emotional Distress Under Rule 12(b)(6) ...........................................15

VI.    CONCLUSION ..................................................................................................16

1

## TABLE OF AUTHORITIES

2

3
**Page(s)**

4
**Cases**

5

*A.F.P. v. United States*,
6
   No. 21 Civ. 00780, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ...................................... 15

7
*Alinsky v. United States*,
   415 F.3d 639 (7th Cir. 2005) .......................................................................................... 12

8

9
*Alvarez-Machain v. United States*,
   No. CV 93-4072SVW(SHX), 1999 WL 34976473 n.11 (C.D. Cal. Mar. 18, 1999)........................... 16

10
*Ashcroft v. Iqbal*,

11
   556 U.S. 662 (2009).................................................................................................... 7, 8

12
*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)....................................................................................................... 7

13

14
*Bender v. Williamsport Area Sch. Dist.*,
   475 U.S. 534 (1986)....................................................................................................... 7

15
*Berkovitz v. United States*,

16
   486 U.S. 531 (1988)...................................................................................................... 10

17
*Bhuiyan v. United States*,
   772 F. App'x 564 (9th Cir. 2019) ...................................................................................... 9

18

19
*Boyles v. Kerr*,
   855 S.W.2d 593 (Tex. 1993)............................................................................................ 16

20
*Bunikyte v. Chertoff*,

21
   No. A-07-CA-16A, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ........................................ 4

22
*Chadd v. United States*,
   794 F.3d 1104 (9th Cir. 2015) ........................................................................................ 10

23

24
*Chapman v. United States*,
   480 F. Supp. 3d 601 (M.D. Pa. 2020) ............................................................................. 12

25
*Chen v. United States*,

26
   854 F.2d 622 (2d Cir. 1988) ............................................................................................ 9

27
*Dreier v. United States*,
   106 F.3d 844 (9th Cir. 1996) ........................................................................................... 7

28

*Elgamal v. Bernacke*,
    714 F. App'x 741 (9th Cir. 2018) .................................................................................... 9

*Elgamal v. United States*,
    No. CV-13-00867, 2015 WL 13648070 (D. Ariz. July 8, 2015) ...................................... 9

*FDIC v. Meyer*,
    510 U.S. 471 (1994) ......................................................................................................... 8

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ........................................................................................... 4

*Flores v. Rosen*,
    984 F.3d 720 (9th Cir. 2020) ........................................................................................... 4

*GATX/Airlog Co. v. United States*,
    286 F.3d 1168 (9th Cir. 2002) ....................................................................................... 10

*Gonzalez v. United States*,
    814 F.3d 1022 (9th Cir. 2016) .................................................................................... 8, 11

*Gutierrez v. Collins*,
    583 S.W.2d 312 (Tex. 1979) .......................................................................................... 16

*Holt v. United States*,
    853 F.3d 1056 (9th Cir. 2017) ....................................................................................... 13

*In re Consol. U.S. Atmospheric Testing Litig.*,
    820 F.2d 982 (9th Cir. 1987) ......................................................................................... 13

*Kelly v. United States*,
    241 F.3d 755 (9th Cir. 2001) ......................................................................................... 10

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ......................................................................................... 7

*Kennewick Irr. Dist. v. United States*,
    880 F.2d 1018 (9th Cir. 1989) ....................................................................................... 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ...................................................................................................... 6, 7

*Lam v. United States*,
    979 F.3d 665 (9th Cir. 2020) .................................................................................... 10, 11

*Lehman v. Nakshian*,
    453 U.S. 156 (1981) ......................................................................................................... 8

*Leticia v. United States*,
    No. 22CV7527NGGRJL, 2023 WL 7110953 (E.D.N.Y. Oct. 27, 2023) ........................ 15

*Liranzo v. United States*,
  690 F.3d 78 (2d Cir. 2012) ............................................................................. 9

*Mazur v. United States*,
  957 F. Supp. 1041 (N.D. Ill. 1997) ................................................................ 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ...................................................................... 15

*Miller v. United States*,
  163 F.3d 591 (9th Cir. 1998) ........................................................................ 11

*Molchatsky v. United States*,
  778 F. Supp. 2d 421 (S.D.N.Y. 2011) .......................................................... 12

*Mundy v. United States*,
  983 F.2d 950 (9th Cir. 1993) .......................................................................... 8

*Nurse v. United States*,
  226 F.3d 996 (9th Cir. 2000) ................................................................... 11, 12

*Quicksilver Res. Inc. v. Eagle Drilling, LLC*,
  792 F. Supp. 2d 948 (S.D. Tex. 2011) .......................................................... 16

*Reed ex rel. Allen v. U.S. Dep't of Interior*,
  231 F.3d 501 (9th Cir. 2000) ........................................................................ 10

*Reynolds v. United States*,
  549 F.3d 1108 (7th Cir. 2008) ...................................................................... 11

*Richards v. United States*,
  369 U.S. 1 (1962) .......................................................................................... 15

*Robinson v. United States*,
  586 F.3d 683 (9th Cir. 2009) .......................................................................... 7

*Routh v. United States*,
  941 F.2d 853 (9th Cir. 1991) ........................................................................ 12

*Ryan v. ICE*,
  974 F.3d 9 (1st Cir. 2020) .............................................................................. 9

*Sabow v. United States*,
  93 F.3d 1445 (9th Cir. 1996) ........................................................................ 10

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .................................................................... 6, 7

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*,
  343 F.3d 1036 (9th Cir. 2003) ........................................................................ 6

*Sea Air Shuttle Corp. v. United States*,
    112 F.3d 532 (1st Cir. 1997) ............................................................................. 9

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ........................................................................................ 13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ............................................................................................ 6

*Teplin v. United States*,
    No. 17-cv-02445-HSG, 2018 WL 1471907 (N.D. Cal. Mar. 26, 2018) ........................ 10, 11

*Thompson v. Corps*,
    159 F. Supp. 3d 56 (D.D.C. 2016) ..................................................................... 13

*Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.*,
    594 F.2d 730 (9th Cir. 1979) ............................................................................. 7

*Tonelli v. United States*,
    60 F.3d 492 (8th Cir. 1995) .............................................................................. 12

*United States v. Dominguez-Portillo*,
    No. EP-17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ............................... 4

*United States v. Gaubert*,
    499 U.S. 315 (1991) .................................................................................... 10, 11

*United States v. Olson*,
    546 U.S. 43 (2005) ............................................................................................ 9

*United States v. Orleans*,
    425 U.S. 807 (1976) ........................................................................................ 14

*United States v. Varig Airlines*,
    467 U.S. 797 (1984) .................................................................................... 11, 12

*United States v. Vasquez-Hernandez*,
    924 F.3d 164 (5th Cir. 2019) ............................................................................. 4

*Vickers v. United States*,
    228 F.3d 944 (9th Cir. 2000) ............................................................................ 12

*Walding v. United States*,
    955 F. Supp. 2d 759 (W.D. Tex. 2013), 955 F. Supp. 2d ........................... 13, 14, 15

*Westbay Steel, Inc. v. United States*,
    970 F.2d 648 (9th Cir. 1992) ............................................................................. 9

*Whisnant v. United States*,
    400 F.3d 1177 (9th Cir. 2005) .......................................................................... 11

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) .................................................................. 7

**Statutes**

6 U.S.C. § 279 ............................................................................................ 3

8 U.S.C. § 1232 ....................................................................................... 3, 4

28 U.S.C. § 1346 ...................................................................................... 15

28 U.S.C. § 2671 ...................................................................................... 14

28 U.S.C. § 2680 ................................................................. 8, 10, 11, 13

28 U.S.C. §§ 1346 .................................................................................. 6, 8

42 U.S.C. § 265 .......................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ................................................. 6

Federal Rule of Civil Procedure 12(b)(6) ........................................... 7, 15

**Regulations**

85 FR 17060-02 (effective Mar. 20, 2020) ................................................ 5

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on Thursday, July 11, 2024, at 9:00 a.m., or as soon thereafter as this matter may be heard by the Honorable Beth Labson Freeman, United States District Judge of the United States District Court for the Northern District of California, located at Courtroom 3 – 5th Floor, 280 South 1st Street, San Jose, CA 95113, Defendant the United States of America will and hereby does move the Court for an order dismissing the Complaint (Dkt. 1) of Plaintiffs Ms. R.H.; S.M.R., a minor child; and J.M.R., a minor child, under Rule 12(b)(1) and (b)(6).

**RELIEF SOUGHT**

Defendant seeks an order dismissing the Complaint for lack of jurisdiction and/or failure to state a claim.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   STATEMENT OF ISSUES TO BE DECIDED**

1.   Whether Plaintiffs' claims must be dismissed because the challenged government actions have no private person analogue, as required by the Federal Tort Claims Act (FTCA);

2.   Whether Plaintiffs' claims are barred by statutory exceptions to the FTCA's limited waiver of sovereign immunity, including the discretionary function exception (DFE), the foreign country exception, and independent contractor exception; and

3.   Whether Plaintiffs' claim for negligent infliction of emotional distress must be dismissed because Texas state law does not recognize such a claim.

**II.   INTRODUCTION**

Plaintiffs, a mother and her two children from El Salvador, allege that they crossed the southern border into the United States together on October 13, 2020, where they encountered U.S. Border Patrol agents and were allegedly separated.  Plaintiffs allege that Ms. R.H. was forced back to Mexico, while S.M.R. and J.M.R. were transferred to the custody of the U.S. Department of Health and Human Services' Office of Refugee Resettlement (ORR).  Plaintiffs concede that certain U.S. Customs and Border Protection (CBP) records reflect that J.M.R. and S.M.R. were apprehended alone, but contend that these records are not accurate.  *See* Compl. ¶¶ 121, 126.

The United States has denounced the prior practice of separating children from their families at the United States-Mexico border and has committed itself to family reunification.[1] But that prior practice does not give rise to this case, and the United States respectfully moves to dismiss claims over which this Court lacks jurisdiction. While the factual dispute highlighted in the Complaint regarding whether J.M.R. and S.M.R. were apprehended alone is not appropriate for resolution at the motion to dismiss stage, several threshold issues prevent Plaintiffs' Complaint from proceeding in whole or in part. The Court should dismiss the Complaint for the following three reasons:

*First*, none of Plaintiffs' claims can proceed under the FTCA because the claims lack the necessary private person analogue. Because only the federal government has the authority to enforce federal criminal and immigration laws, there is no private person analogue that could support a claim under the FTCA.

*Second*, Plaintiffs' claims are barred because they fall within at least three exceptions to the FTCA's limited waiver of sovereign immunity: the discretionary function exception, the foreign country exception, and the independent contractor exception. Plaintiffs claim for negligent supervision, for both government employees and subcontractors, is barred by the DFE. To the extent Ms. R.H.'s injuries were suffered in Mexico, or S.M.R. and J.M.R. were injured by the conduct of Abbott House, an independent entity contracting with ORR, these claims cannot proceed.

*Finally*, Plaintiffs' claim for negligent infliction of emotional distress must be dismissed, because no such cause of action exists under Texas state law.

---

[1] *See* Executive Order on the Establishment of Interagency Task Force on the Reunification of Families, Feb. 2, 2021, at https://www.whitehouse.gov/briefingroom/presidential-actions/2021/02/02/executiveorder-on-the-establishment-of-interagency-task-force-on-the-reunification-of-families.

1    **III.    FACTUAL AND PROCEDURAL BACKGROUND[2]**

2         **A.    Statutory Framework for Immigration Custody of Unaccompanied Minors[3]**

3         Federal immigration law authorizes the government to provide for the custody of certain children

4    who are present in the United States without lawful immigration status.  Specifically, ORR is charged

5    with "the care and placement of unaccompanied alien children who are in federal custody by reason of

6    their immigration status."  6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The

7    term "unaccompanied alien child (UAC) is defined as a child who: (1) "has no lawful immigration status

8    in the United States," (2) "has not attained 18 years of age," and (3) for whom "there is no parent or

9    legal guardian in the United States" or "no parent or legal guardian in the United States is available to

10   provide care and physical custody."  6 U.S.C. § 279(g)(2).

11        Under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008

12   (TVPRA) any agency "shall transfer" an unaccompanied alien child (UAC) to ORR's custody "not later

13   than 72 hours after determining that such child is an unaccompanied alien child," absent exceptional

14   circumstances.  8 U.S.C. § 1232(b)(3).  ORR seeks to place UACs "in the least restrictive setting that is

15   in the best interest of the child."  *Id.* § 1232(c)(2)(A).  But ORR "shall not release such children upon

16   their own recognizance."  6 U.S.C. § 279(2)(B).  Rather, once ORR takes custody, it must follow

17   detailed statutory and regulatory provisions before releasing the UAC to an approved sponsor.  8 U.S.C.

18   § 1232(c)(3).  Congress forbids HHS from transferring custody of a UAC "unless the Secretary of

19   Health and Human Services makes a determination that the proposed custodian is capable of providing

20   for the child's physical and mental well-being" and that this determination "shall, at a minimum, include

21   verification of the custodian's identity and relationship to the child, if any, as well as an independent

22

23   ――――――――――――――

24        [2] The allegations in this section are taken from Plaintiffs' Complaint (Dkt. 1) and are taken as

25   facts solely for purposes of this motion.

26        [3] In this brief, the term "unaccompanied minors" has the same meaning as the term

27   "unaccompanied alien child[ren]" under 6 U.S.C. § 279(g)(2).

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

1    finding that the individual has not engaged in any activity that would indicate a potential risk to the

2    child." *Id*. § 1232(c)(3)(A).  In some instances, a home study is required.  *Id*. § 1232(c)(3)(B).

3        **B.    Flores Agreement Requirements**

4        In 1997, the government entered into a settlement agreement referred to as the "Flores

5    Agreement."  *See, e.g.*, *Flores v. Sessions*, No. 85 C 4544 (C.D. Cal. Feb. 2, 2015) ("*Flores I*").  The

6    Flores Agreement "sets out nationwide policy for the detention, release, and treatment of minors" in

7    immigration authorities' custody.  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) ("*Flores II*")

8    (citing Flores Agreement ¶ 9).  According to the Ninth Circuit, the Flores Agreement "unambiguously"

9    applies to both unaccompanied minors and minors who are encountered with their parents or legal

10   guardians.  *Id*. at 901.  Under the agreement, the government must expeditiously transfer any minor who

11   cannot be released from custody to a non-secure, licensed facility.  *Id*. at 902-03 (quoting Flores

12   Agreement ¶ 12).  The government must also "make and record the prompt and continuous efforts on its

13   part toward . . . releasing the minor."  *Flores v. Rosen*, 984 F.3d 720, 738 (9th Cir. 2020) ("*Flores III*")

14   (quoting Flores Agreement ¶ 14).

15       Notably, the Flores Agreement applies only to minors.  *Flores II*, 828 F.3d at 901.  It does not

16   address "the housing of family units and the scope of parental rights for adults apprehended with their

17   children," and it "does not contemplate releasing a child to a parent who remains in custody, because

18   that would not be a 'release.'"  *Id*. at 906; *see also United States v. Dominguez-Portillo*, No. EP-17-MJ-

19   4409, 2018 WL 315759, at \*9 (W.D. Tex. Jan. 5, 2018) (*Flores* "does not provide that parents are

20   entitled to care for their children if they were simultaneously arrested by immigration authorities"), *aff'd*

21   *sub nom. United States v. Vasquez-Hernandez*, 924 F.3d 164 (5th Cir. 2019).  Nor does the Flores

22   Agreement provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at

23   908; *see also Dominguez-Portillo*, 2018 WL 315759, at \*14-15; *Bunikyte v. Chertoff*, No. A-07-CA-

24   16A, 2007 WL 1074070, at \*16 (W.D. Tex. Apr. 9, 2007).  Although the Flores Agreement gives

25   preference to the release of minors to a parent, this preference "does not mean that the government must

26   also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores II*,

27   828 F.3d at 908.

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### C.     Detention, Separation, and Reunification of Plaintiffs

Plaintiffs are a mother (using the pseudonym R.H.) and her two sons (using the pseudonyms J.M.R. and S.M.R., respectively) who, according to the Complaint, left El Salvador and "sought asylum in [the United States] after Ms. R.H.'s husband – J.M.R. and S.M.R.'s father – was murdered" by gang members.  Compl. ¶ 1.  Plaintiffs allege that they unlawfully entered the United States together on or about October 10, 2020, encountered U.S. Border Patrol agents, and were immediately processed and returned to Mexico pursuant to Title 42 authority.[4]  *Id.* ¶¶ 84, 87.  Plaintiffs allege that they again unlawfully entered the United States together on or about October 13, 2020, and were separated after encountering U.S. Border Patrol agents).  *Id.* ¶¶ 2, 92-93.  Ms. R.H. alleges that she was forced back to Mexico shortly after crossing, *id.* ¶ 89-113, while S.M.R. and J.M.R. were processed as UACs and transferred to ORR custody.  *Id.*  Ms. R.H. alleges that she spent five months in Mexico separated from

---

[4] 42 U.S.C. § 265, commonly referred to as "Title 42," grants the Director of the Centers for Disease Control and Prevention (previously the Surgeon General) the power to "prohibit, in whole or in part, the introduction of persons and property from such countries or placed as he shall designate" to prevent the introduction of a communicable disease into the United States.  42 U.S.C. § 265.  On March 20, 2020, the CDC Director invoked this authority to suspend the introduction of certain noncitizens from Mexico into the United States in response to the COVID-19 pandemic.  *See* Notice of Order Under Sections 362 and 365 of the Public Health Service Act Suspending Introduction of Certain Persons From Countries Where a Communicable Disease Exists, 85 FR 17060-02 (effective Mar. 20, 2020).  Title 42 was in effect at the time of the events alleged in the Complaint.  *See, e.g.*, U.S. Customs and Border Protection, "Nationwide Enforcement Encounters:  Title 8 Enforcement Actions and Title 42 Expulsions," available at https://www.cbp.gov/newsroom/stats/cbp-enforcement-statistics/title-8-and-title-42-statistics (last accessed May 29, 2024) ("Title 42 expulsions began March 21, 2020, and ended on May 11, 2023.").

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

her children, during which time she was held captive and tortured by individuals associated with Mexican law enforcement or cartels for approximately one month starting in October 2020.  *Id.* ¶ 134-35.

J.M.R. and S.M.R. were transferred to ORR custody and initially placed at St. P.J.'s Home, in San Antonio, Texas.  In November 2020, they were transferred from St. P.J.'s Home, in San Antonio, Texas to Abbott House, "an ORR-licensed transitional foster care home in the Bronx, New York."  *Id.* ¶ 144.  J.M.R. and S.M.R. were placed with a foster family and allegedly suffered from depression and anxiety due to the conditions of the placement.  *Id.* ¶ 147.

Ms. R.H. entered the United States on February 25, 2021, after a request for humanitarian parole was granted.  *Id.* ¶ 10.  She was reunited with S.M.R. and J.M.R. two days later.  *Id.* ¶ 11.

### D.      Plaintiffs' Complaint

Plaintiffs filed this lawsuit on November 9, 2023.  Dkt. No. 1.  Plaintiffs bring this action against the United States under the FTCA, 28 U.S.C. §§ 1346(b)(1), seeking damages for five claims: (1) intentional infliction of emotional distress ("IIED"); (2) negligent infliction of emotion distress ("NIED"); (3) negligence; (4) intentional interference with parental consortium by person without right of custody; and (5) negligent supervision.  Compl. ¶¶ 189–213.

## IV.    LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(1)

A defendant may move to dismiss a complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cty.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003).  Courts must consider the threshold issue of jurisdiction before addressing the merits of a case.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Plaintiffs bear the burden of establishing jurisdiction because, by filing a complaint in federal court, they seek to invoke it.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The Court may dismiss an action under Rule 12(b)(1) if the

complaint does not allege facts sufficient to establish subject matter jurisdiction on its face or, even if the complaint asserts grounds for jurisdiction on its face, the evidence does not support a finding of jurisdiction. *Thornhill Publishing Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). A facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge allows the court to look beyond the complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). The Court also can hear evidence outside the pleadings and resolve factual disputes, if necessary, without treating the motion as one for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996). "Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence," and the plaintiff's allegations carry no presumption of truthfulness. *Robinson*, 586 F.3d at 685. Whether a facial or factual attack, because "[f]ederal courts … have only that power that is authorized by Article III of the Constitution and the statutes enacted by Congress," *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citation omitted), the Court presumes the action lies outside its limited jurisdiction, and the burden is on the party asserting jurisdiction to establish that it exists. *Kokkonen*, 511 U.S. at 377.

## B.   Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual assertions, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Mere conclusions" need not be accepted as true when deciding whether a claim is facially plausible. *Id.* at 664; *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (quoting *Twombly*, 550 U.S. at 555)). Allegations that are "merely consistent with a defendant's liability," or

1  reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief,"

2  and thus are insufficient to state a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79

3  (citations and internal quotation marks omitted).

4  **V.    ARGUMENT**

5  **A.    Sovereign Immunity Has Not Been Waived For Plaintiffs' Claims Based on Injuries Suffered in a Foreign Country, Based on the Acts or Omissions of Independent**

6  **Contractors, or For Which There Is No Private Person Analogue**

7  The United States, as a sovereign entity, "is immune from suit save as it consents to be sued."

8  *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981) (quotation omitted).  "[T]he terms of [the government's]

9  consent to be sued in any court define that court's jurisdiction to entertain the suit."  *Lehman*, 453 U.S.

10  at 160 (internal quotes and citations omitted).  Absent a specific, express waiver, sovereign immunity

11  bars a suit against the government.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994).

12  The FTCA is a "limited waiver of sovereign immunity." *Gonzalez v. United States*, 814 F.3d

13  1022, 1026 (9th Cir. 2016).  The statute allows suit against the United States when a federal employee

14  acting within the scope of his or her employment causes "injury, loss of property, or personal injury or

15  death."  28 U.S.C. § 1346(b)(1).  However, the FTCA's waiver of sovereign immunity is subject to

16  exceptions.  28 U.S.C. § 2680.  When an exception applies, the United States retains sovereign

17  immunity, and the claim must be dismissed.  *Mundy v. United States*, 983 F.2d 950, 952 (9th Cir. 1993).

18  As discussed below, several exceptions to the FTCA's general waiver of sovereign immunity apply here

19  that preclude all or some of Plaintiffs' claims.

20  **1.    No Private Person Analogue**

21  Plaintiffs' claims must be dismissed because the challenged government actions have no private-

22  person analogue.  The FTCA's waiver of sovereign immunity is limited to "circumstances where the

23  United States, if a private person, would be liable to the claimant in accordance with the law of the place

24  where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort recovery

25  against the United States only "in the same manner and to the same extent as a private individual under

26  like circumstances."  *Id*. § 2674.  The FTCA does not waive sovereign immunity for claims against the

27  United States based on governmental action "of the type that private persons could not engage in and

28

1   hence could not be liable under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988)

2   (quotation omitted).

3        The FTCA "requires a court to look to the state-law liability of private entities, not to that of

4   public entities, when assessing the Government's liability under the FTCA [even] in the performance of

5   activities which private persons do not perform." *United States v. Olson*, 546 U.S. 43, 46 (2005)

6   (quotation omitted); *Liranzo v. United States*, 690 F.3d 78, 86 (2d Cir. 2012).  Though the private

7   analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government

8   actor would be subject to liability under state law if a private person.  *Westbay Steel, Inc. v. United*

9   *States*, 970 F.2d 648, 650 (9th Cir. 1992).

10        Because only the federal government has the authority to enforce federal immigration laws, there

11  is no private person analogue that could support a claim under the FTCA.  The alleged harms here stem

12  from the government's decision to treat S.M.R. and J.M.R. as UACs, resulting in their placement in the

13  care and custody of ORR.  The United States has not waived its sovereign immunity for such decisions

14  to enforce federal law, and the decisions have no private-person counterpart.  *See, e.g.*, *Sea Air Shuttle*

15  *Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take

16  enforcement action under federal law was not conduct for which private individual could be held liable

17  and thus did not give rise to FTCA action); *Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling

18  immigration and the presence of noncitizens within the country are duties and powers vested exclusively

19  in the sovereign."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("because no private

20  person could be sued for anything sufficiently analogous to the negligent denial of an immigration status

21  adjustment application, that claim must be dismissed as well"); *Elgamal v. United States*, No. CV-13-

22  00867, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration matters" are

23  "an inherently governmental function"); *Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir.

24  2019) ("there is, as a general matter, no private analogue to governmental withdrawal of immigration

25  benefits"); *Mazur v. United States*, 957 F. Supp. 1041, 1042–43 (N.D. Ill. 1997) (regarding

26  naturalization of noncitizens, "only the United States has the power to act" and "there is no private

27  analog[ue] under state law").

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

## 2.    The Discretionary Function Exception Bars Plaintiffs' Claim for Negligent Supervision

Plaintiffs' claim for negligent supervision, for both government employees and subcontractors, is barred by the discretionary function exception (DFE).

The DFE bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see also United States v. Gaubert*, 499 U.S. 315, 325 (1991); *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

The Supreme Court has set forth a two-part test to determine if the DFE applies. *Gaubert*, 499 U.S. at 328–32. Courts must first ask whether the challenged conduct "'involve[s] an element of judgment or choice,' as determined by the 'nature of the conduct, rather than the status of the actor.'" *Teplin v. United States*, No. 17-cv-02445-HSG, 2018 WL 1471907, at *4 (N.D. Cal. Mar. 26, 2018) (quoting *Gaubert*, 499 U.S. at 322); *see also Berkovitz*, 486 U.S. at 536; *Chadd v. United States*, 794 F.3d 1104, 1109 (9th Cir. 2015). The first prong is met unless "'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Sabow v. United States*, 93 F.3d 1445, 1451 (9th Cir. 1996) (quoting *Berkovitz*, 486 U.S. at 536); *see also Kelly v. United States*, 241 F.3d 755, 761 (9th Cir. 2001) ("[A] general regulation or policy . . . does not remove discretion unless it specifically prescribes a course of conduct."); *Reed ex rel. Allen v. U.S. Dep't of Interior*, 231 F.3d 501, 504 (9th Cir. 2000) (since "[n]o federal statute, regulation, or policy require[d] a particular course of action," the agency's actions "could be no other way than by the exercise of discretion").

Thus, where no federal statute, regulation or policy prescribes a specific course of action to follow, the challenged conduct involves an element of judgment. *See Berkovitz*, 486 U.S. at 536. Even if a regulation contains a mandate to do something, if that mandate involves judgment or choice, the discretion element is satisfied. *See GATX/Airlog Co. v. United States*, 286 F.3d 1168, 1174–75 (9th Cir. 2002). Further, where the policies that inform the conduct at issue allow the exercise of discretion, the agency's acts or failures to act are presumed to be discretionary. *Lam v. United States*, 979 F.3d 665, 674 (9th Cir. 2020). Finally, the applicable policies and authorities must be considered in context—"the

1   presence of a few, isolated provisions cast in mandatory language does not transform an otherwise

2   suggestive set of guidelines into binding agency regulations."  *Id.* at 677.

3         Second, if the conduct involves choice or discretion, courts must next determine whether "the

4   judgment of the government employee [is] 'of the kind that the discretionary function exception was

5   designed to shield.'"  *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 322–23).  The

6   DFE is designed to "'prevent judicial second-guessing of legislative and administrative decisions

7   grounded in social, economic, and political policy' through a tort action"—therefore, courts construe it

8   as "protect[ing] only governmental actions and decisions based on considerations of public policy."  *Id.*;

9   *see also United States v. Varig Airlines*, 467 U.S. 797, 814 (1984).  Thus, the focus of this inquiry is

10  "whether the 'nature of the actions taken,' pursuant to an exercise of discretion, 'are susceptible to

11  policy analysis.'"  *Teplin*, 2018 WL 1471907, at *4 (quoting *Gaubert*, 499 U.S. at 325); *see also*

12  *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (the discretion must be "susceptible to

13  social, economic, or political policy analysis"); *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir.

14  2000) (explaining that the decision "'need not *actually* be grounded in policy considerations' so long as

15  it is, 'by its nature, susceptible to a policy analysis.'") (quoting *Miller v. United States*, 163 F.3d 591,

16  593 (9th Cir. 1998)) (emphasis added in *Nurse*).

17        The government need not "prove that it considered these factors and made a conscious decision

18  on the basis of them."  *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1028 (9th Cir. 1989).

19  Indeed, under the second prong, the government actors' subjective motive is immaterial because "the

20  focus" of the inquiry "is 'not on the agent's subjective intent in exercising the discretion conferred by

21  statute or regulation,' but rather 'on the nature of the actions taken and on whether they are *susceptible*

22  to policy analysis.'" *Gonzalez*, 814 F.3d at 1027–28 (quoting *Gaubert*, 499 U.S. at 325) (emphasis

23  added).  Where the relevant policies provide for discretion, it must be presumed that the government's

24  actions are grounded in policy when exercising that discretion. *Lam*, 979 F.3d at 681. And the statutory

25  text confirms that the exception applies "whether or not the discretion involved [was] abused" by United

26  States officials.  28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir.

27  2008) (the DFE applies even where there are allegations of "malicious and bad faith conduct" because

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

"subjective intent is irrelevant to [the] analysis").

If both prongs of the *Gaubert/Berkovitz* test are met, the DFE applies, the United States retains its sovereign immunity, the Court lacks jurisdiction, and the claim must be dismissed.  *See Nurse*, 226 F.3d at 1000.  This result applies even where the government may have been negligent in the performance of such discretionary acts, as "[n]egligence is irrelevant to the discretionary function inquiry."  *Routh v. United States*, 941 F.2d 853, 855 (9th Cir. 1991).  The FTCA's limited waiver of sovereign immunity was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse of discretion."  H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.

Applied here, multiple courts have specifically held that decisions relating to the hiring, training, and supervision of employees inherently involve the kind of judgment that the discretionary function exception was meant to protect.  *See Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) (collecting case and noting that "[t]his court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); *see also Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995) ("Issues of employee supervision and retention generally involve the permissible exercise of policy judgment and fall within the discretionary function exception."); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind."); *Chapman v. United States*, 480 F. Supp. 3d 601, 611 (M.D. Pa. 2020) (supervision of postal employee involves discretion and policy considerations); see *also Alinsky v. United States*, 415 F.3d 639, 647–48 (7th Cir. 2005) (indicating that plaintiff in negligent supervision FTCA claim must identify a specific and mandatory policy governing the manner of supervision and training); *Molchatsky v. United States*, 778 F. Supp. 2d 421, 435 (S.D.N.Y. 2011) ("In the absence of allegations demonstrating relevant mandatory obligations, the Court presumes that the challenged acts and omissions are discretionary and not amenable to suit.").

The selection of a contractor to provide custody and care of UACs is also within ORR's policy-

1    based discretion.  *See Walding v. United States*, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013), 955 F.

2    Supp. 2d at 771–72 ("the ultimate choice of facility for housing unaccompanied alien children is a

3    decision vested with policy considerations").  ORR also has discretion with respect to its supervision of

4    grantees, which involves "policy decisions concerning how to allocate its resources to oversee the

5    facilities and personnel." *Id*. at 783; *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d

6    982, 995 (9th Cir. 1987) (holding discretionary function exception barred claim that government

7    negligently supervised contractor's compliance with safety procedures and guidelines).

8         Accordingly, Plaintiffs' claim for negligent supervision, for both government employees and

9    subcontractors, is barred by the DFE.

10                    **3.      Ms. R.H.'s Claims Are Partially Barred by the Foreign Country Exception**

11        The FTCA's waiver of sovereign immunity does not extend to "any claim arising in a foreign

12   country."  28 U.S.C. § 2680(k).  The Supreme Court has held that "arising in" means that the harm

13   "occurred on foreign soil" regardless of whether an act or omission that could have caused that injury

14   occurred in the United States.  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 700–06 (2004).  Put another

15   way, the exception "bars all claims based on any injury suffered in a foreign country, regardless of

16   where the tortuous act or omission occurred." *Id.* at 712.  The Ninth Circuit has further held that "an

17   injury is suffered where the harm first impinges upon the body, even if it is later diagnosed elsewhere."

18   *S.H. by Holt v. United States*, 853 F.3d 1056, 1058 (9th Cir. 2017) (quotation omitted).  Even if some

19   action that took place in the Unites States can be traced to the injury, the claim will be barred if the

20   injury took place outside of the United States.  *Thompson v. Corps*, 159 F. Supp. 3d 56, 62 (D.D.C.

21   2016) ("Following the *Sosa* Court's reasoning, even if the Peace Corps acted negligently in the United

22   States when communicating the risks of mefloquine, plaintiff's injuries were still sustained as a result of

23   taking the drug in Burkina Faso, and the foreign country exception bars her tort claims against the

24   federal government").

25        Here, many of Ms. R.H.'s alleged injuries were suffered in Mexico, not the United States.  For

26   example, Ms. R.H. alleges that she was held captive and tortured for approximately one month in

27   Mexico starting in October 2020.  Compl. ¶ 134-35.  She further alleges that she unsuccessfully

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

attempted to enter the United States from Mexico four times from November 2020 to December 2020, but felt "helpless, despondent, and desperate" during these attempted crossings.  Compl. ¶ 141-42.  These injuries suffered in Mexico appear to be the basis of at least part of several claims.  But under *Sosa* and its progeny, FTCA claims may not proceed where, as here, the injuries were suffered outside the United States.

Accordingly, Ms. R.H.'s claims should be dismissed to the extent they allege injuries suffered in Mexico.

### 4.    Independent Contractor Exception

Plaintiffs' allegations that J.M.R. and S.M.R. suffered injuries while housed in an Abbot House, a private licensed care provider facility, are barred by the FTCA's independent contractor exception.  Compl. ¶¶ 144–157.  The FTCA "was never intended . . . to reach employees or agents of all federally funded programs that confer benefits on people."  *United States v. Orleans*, 425 U.S. 807, 813 (1976).  It waives sovereign immunity only for tortious conduct of an "employee of the Government," and it expressly "excludes 'any contractor with the United States.'"  *Id.* (quoting 28 U.S.C. § 2671).  The FTCA thus preserves sovereign immunity for torts committed by government contractors or their employees.  *Id.*

Plaintiffs allege that J.M.R. and S.M.R. suffered harm while housed at a care provider facility operated by "Abbott House, an ORR-licensed transitional foster care home in the Bronx, New York."  Compl. ¶ 144.  This Court can take judicial notice of the fact that, while housed at the Abbott House facility, S.M.R. and J.M.R. were in the custody of a private contractor.  *See Walding*, 955 F. Supp. 2d at 794–95 (holding that an ORR grantee was an independent contractor).[5]  Plaintiffs do not allege that employees of Abbott House were employees of the United States.  Nor could they credibly do so.  ORR contractors that provide shelter and care for UACs are not employees of the United States within the

---

[5] *See* Declaration of James De La Cruz dated June 3, 2024, annexed hereto as Exhibit 1; *see also* https://www.abbotthouse.net/why-abbott-house/overview.html (last accessed May 25, 2024) (describing Abbott House as "a trauma-informed care agency.").

1  meaning of the FTCA. *Id.* at 791–811 (independent contractor exception barred claim that United States

2  negligently failed to ensure health and safety of minors housed at grantee facility); *see also* Declaration

3  of James De La Cruz (Exhibit 1) ("De La Cruz Decl.") ¶ 10; De La Cruz Decl., Exhibit A.

4         Accordingly, all claims regarding care in the Abbott House facility must be dismissed, as these

5  claims are based entirely on actions taken by independent contractors rather than government

6  employees. *See Leticia v. United States*, No. 22CV7527NGGRJL, 2023 WL 7110953, at *19 (E.D.N.Y.

7  Oct. 27, 2023) ("the independent contractor exception does bar claims arising from actions for which

8  private contractors are wholly responsible and for which Plaintiffs' claims rely on a theory of vicarious

9  liability."); *A.F.P. v. United States*, No. 21 Civ. 00780, 2022 WL 2704570, at *17–18 (E.D. Cal. July 12,

10 2022) (finding that, in case where UAC was housed in ORR contractor facility, "to the extent plaintiffs'

11 [] claim of negligence is based on vicarious liability for the conduct of the Children's Village staff, that

12 claim is barred by the independent contractor exclusion.").

13        **B.     Plaintiffs Have Failed to State a Claim for Negligent Infliction of Emotional Distress**
           **Under Rule 12(b)(6)**

14

15        Even if this Court were to conclude that it had jurisdiction over Plaintiffs' claims, which it

16 should not, Plaintiffs' claims for negligent infliction of emotional distress should still be dismissed for

17 failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Mendiondo v.*

18 *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is

19 appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

20 cognizable legal theory."). At the outset, Plaintiffs' claims should be decided under Texas law. The

21 applicable law in an FTCA action is the law of the state where the alleged tortious act or omission

22 occurred. *See* 28 U.S.C. § 1346(b). The court uses the choice-of-law provisions from that state to

23 determine what substantive law applies. *See Richards v. United States*, 369 U.S. 1, 8–10 (1962). Here,

24 the allegedly tortious acts or omissions that form the basis of Plaintiffs' Complaint (*i.e.* their separation)

25 occurred in Texas. Therefore, Texas's choice of law rules apply – and, because Texas courts look to the

26 state with the most significant relationship in their choice-of-law analysis, the tort law of Texas applies

27

28

MOTION TO DISMISS
Case No: 23-CV-5793-BLF

1  to Plaintiffs' claims. *See Quicksilver Res. Inc. v. Eagle Drilling*, *LLC*, 792 F. Supp. 2d 948, 951 (S.D.

2  Tex. 2011) (citing *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979)).

3        Here, Plaintiffs' NIED claim fails to meet the Rule 12(b)(6) pleading standard because Texas

4  law does not recognize claims for negligent infliction of emotional distress. *Boyles v. Kerr*, 855 S.W.2d

5  593, 597 (Tex. 1993) (Under Texas law, "there is no general duty not to negligently inflict emotional

6  distress"); *Alvarez-Machain v. United States*, No. CV 93-4072SVW(SHX), 1999 WL 34976473, at *7

7  n.11 (C.D. Cal. Mar. 18, 1999) (observing that "Texas law agrees with California in this respect and

8  does not contain an independent claim for negligent infliction of emotional distress").

9  **VI.**    **CONCLUSION**

10        For the foregoing reasons, the Court should dismiss the claims against the United States in whole

11  or part.

12  Dated:      June 3, 2024

13

14          Respectfully submitted,

15          ISMAIL J. RAMSEY
        United States Attorney

16          */s/ Michael A. Keough*

17          MICHAEL A. KEOUGH
        VALERIE E. SMITH

18          Assistant United States Attorneys

19          *Attorneys for Defendant*

20          *United States of America*

21

22

23

24

25

26

27

28