```
1   Lisa Weissman-Ward (CSB No. 298362)
    Jayashri Srikantiah (CSB No. 189556)
2   IMMIGRANTS' RIGHTS CLINIC
    Mills Legal Clinic at Stanford Law School
3   Crown Quadrangle, 559 Nathan Abbott Way
    Stanford, CA  94305-8610
4   Telephone:    650.724.7396
    Facsimile:    650.723.4426
5   lweissmanward@law.stanford.edu
    jsrikantiah@law.stanford.edu
6
    Claudia Valenzuela*
7   Jessica Zhang*
    IMMIGRANT LEGAL DEFENSE
8   1301 Clay St., #70010
    Oakland, CA  94612
9   Telephone:    510.519.1231
    Facsimile:    510.890.3101
10  claudia@ild.org
    jessica@ild.org
11
    Additional Counsel listed on next page
12
    Attorneys for Plaintiffs
13
    *admitted pro hac vice
14
```

FENWICK & WEST LLP
ATTORNEYS AT LAW

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| Ms. R.H.; S.M.R., a minor child; J.M.R., a minor child, | Case No.: 5:23-cv-05793-EKL |
| Plaintiffs, | **JOINT STATEMENT REGARDING DISCOVERY DISPUTES** |
| v. | |
| UNITED STATES OF AMERICA, | Judge Susan van Keulen |
| Defendant. | |

JOINT STATEMENT REGARDING
DISCOVERY DISPUTES

CASE NO.: 5:23-cv-05793-EKL

Lynn H. Pasahow (CSB No. 54283)
Johnathan Chai (CSB No. 339315)
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone:    650.988.8500
Facsimile:    650.938.5200
lpasahow@fenwick.com
jchai@fenwick.com

Catherine H. McCord* (NYB No. 5168992)
FENWICK & WEST LLP
902 Broadway, 18th Floor
New York, NY 10010-6035
Telephone:    212.430.2600
Facsimile:    650.938.5200
cmccord@fenwick.com

Lisa Marie Straehle (CSB No. 352893)
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA 98101
Telephone:    206.389.4510
Facsimile:    206.389.4511
lstraehle@fenwick.com

*Attorneys for Plaintiffs*

*admitted pro hac vice

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
MICHAEL A. KEOUGH (NYRN 5199666)
Assistant United States Attorney

   1301 Clay Street, Suite 340S
   Oakland, California 94612-5217
   Telephone: (510) 637-3721
   Facsimile: (510) 637-3724
   michael.keough@usdoj.gov

*Attorneys for Defendant*

Pursuant to Section 7.b. of the Court's Civil and Discovery Referral Matters Standing Order, the Parties submit this JOINT STATEMENT REGARDING DISCOVERY DISPUTES. Fact discovery closed on February 27, 2026. Trial is scheduled for December 7, 2026. (Dkt. 93.) The Parties conferred by videoconference on February 20, 2026, and corresponded by email both before and after on the discovery disputes. Three disputes remain: (1) the sufficiency of Defendant's response to Plaintiffs' Interrogatory No. 3 ("ROG 3"), (2) the sufficiency of Defendant's testimony on Topic 12 of Plaintiffs' 30(b)(6) Notice, and (3) the appropriateness of Defendant's redactions based on the deliberative process privilege ("DPP").

**Plaintiffs' compromises**:

(1) Defendant supplements its ROG 3 response to state: (a) which request for humanitarian parole was granted, if not Ms. R.H.'s sole written request submitted January 20, 2021 ("January request"); (b) all factual and legal conclusions for the decision to grant parole; (c) whether "the prior request for humanitarian parole" refers to the January 20, 2021 request; and (d) if the January 20, 2021 request was granted, who made the decision to grant and the factual and legal conclusions for granting.

(2) Defendant provides a 30(b)(6) witness for a 2-hour deposition who is adequately prepared to testify on Topic 12 concerning: "The assessment, adjudication, and grant of Ms. R.H.'s January 20, 2021, Request for Humanitarian Parole and Immediate Family Reunification."

(3) Defendant lifts all redactions based on an overly broad/inappropriate assertion of DPP. Upon 14 days from Defendant's production of the documents with redactions lifted and a complete privilege log, Plaintiffs may request relief from the Court if there remains a dispute as to sufficiency of the lifted redactions.

**Defendant's compromises**:

(1) Defendant can supplement the interrogatory response to clarify (a) that the decision to parole was made under ICE-ERO's general parole authority under Section 212(d)(5)(A) that applied to parole for any humanitarian reason, requested or not, (b) the factual reasons for the parole were a denial of detention space due to Plaintiff Ms. R.H.'s claimed medical conditions consistent with Section 212(d)(5)(A), and (c) confirm that the "prior request

for humanitarian parole" is the one made by counsel on January 20, 2021.

(2)     Defendant has already provided a second 30(b)(6) witness on Topic 12 as part of the parties' compromise to resolve this dispute.  No further deposition is necessary.

(3)     Defendant has already agreed to make a supplemental production and Plaintiffs seek to preserve their ability to raise objections to this production. Defendants do not oppose that request.  Further, any relief is already available to Plaintiffs as Defendant has already agreed to lift redactions related to three categories specifically discussed by the parties.

## I.     PLAINTIFFS' STATEMENT

### A.     ROG 3 Response

On March 7, 2025, Plaintiffs propounded their First Set of Interrogatories; ROG 3 requested that Defendant: "Identify the individual(s) who made the decision to grant the application for humanitarian parole submitted to DHS-CBP by Plaintiff Ms. R.H. and the factual and legal conclusions for granting the application." (Ex. 1.)  A central dispute in this case is whether Defendant unlawfully separated Plaintiff Ms. R.H. from her Plaintiff sons after they crossed the U.S.-Mexico border on October 13, 2020.  Ms. R.H.'s January request for humanitarian parole supports Plaintiffs' claim that they were unlawfully separated.  Therefore, the government's assessment of the January request and any determinations concerning the veracity of the claims are highly probative.  Defendant responded on May 7, 2025, that "Defendant's investigation of this interrogatory is ongoing.  Defendant will supplement this response if and when it receives further information regarding this interrogatory." (Ex. 2.) Plaintiffs requested that Defendant supplement its response, and on February 13, 2026, after Defendant's final 30(b)(6) deposition and two weeks before the close of fact discovery, Defendant amended its response to state, in full, that: "ICE ERO made the decision to parole based on a denial of detention space due to Plaintiff Ms. R.H.'s claimed medical conditions. The decision to parole was not based on the prior request for humanitarian parole." (Ex. 3.)  This is deficient at least because it does not identify the "individual(s) who made the decision to grant the application" nor does it identify the "legal conclusions for granting the application."

Additionally, the "decision to parole" that Defendant references in its response is, in fact,

a grant of humanitarian parole. Ms. R.H.'s February 25, 2021 arrival record includes a "PAROLED" stamp with a purpose of "Humanitarian 212(d)(5)(A) INA," citing the Immigration and Nationality Act ("INA"). (Dep. Ex. 47 at 1; see also id. at 2 (noting "Humanitarian Parole 212(d)(5)(A) INA" in the comments section).) And when asked in deposition whether this stamp "means that Ms. R.H.'s request for humanitarian parole was granted," Defendant's 30(b)(6) witness answered that "[i]t was granted" by ERO. (Ex. 4 at 34:2-10.) Additionally, correspondence regarding Ms. R.H.'s parole produced by both Plaintiffs and Defendant (although Defendant's production is nearly fully redacted) explicitly references Ms. R.H.'s January request. Defendant must supplement its ROG 3 response to reflect information regarding the grant of Ms. R.H.'s humanitarian parole.

Moreover, it is unclear from Defendant's response whether "the prior request for humanitarian parole" is referring to Ms. R.H.'s January 20, 2021 request or another purported request. Ms. R.H. submitted only one request for humanitarian parole to DHS-CBP, and it was Plaintiffs' understanding that her application for admission into the United States on February 25, 2021 was granted. One day before the close of fact discovery, Defendant's counsel stated in an email to Plaintiffs that "[m]y understanding is that the January 20 parole request was not itself granted (or denied), as the amended Rog 3 response notes." (2/26/2026 12:01pm Email.) But Defendant's verified response does not reflect this. If counsel's understanding is true, this should be included in the ROG 3 response. Further, if Defendant's position is that Ms. R.H. made two (or more) requests for parole and that the latter request was granted, not the former request, Defendant has unfairly and severely prejudiced Plaintiffs' ability to assess the facts of the case. Defendant did not disclose this position prior to February 26, 2026, even though Plaintiffs served ROG 3 nearly one year ago, leaving insufficient time for Plaintiffs to seek clarification on this position earlier, for example, through an additional interrogatory or questioning during the 30(b)(6) depositions. Contrary to this position, Defendant's 30(b)(6) witness agreed that Ms. R.H.'s request "initiated in January 2021" was "granted in February 2021." (Ex. 4 at 37:3-13.)

### B.    30(b)(6) Topic 12

Plaintiffs' 30(b)(6) Topic 12 states: "The assessment, adjudication, and grant of Ms.

R.H.'s January 20, 2021, Request for Humanitarian Parole and Immediate Family Reunification." (Ex. 5.) Defendant "object[ed] to this topic to the extent it seeks testimony from an agency other than CBP, namely the headquarters unit of the U.S. Department of Homeland Security" but responded "for efficiency, Defendant will prepare the CBP witness to testify regarding this topic for policies in effect in January and February, 2021." (*Id.*) As discussed above, Defendant's counsel understands that Ms. R.H.'s January request was not granted. Even if true, Defendant's 30(b)(6) witnesses were not adequately prepared to testify on Topic 12 with respect to at least the "assessment" of the January request.

The following timeline of produced emails shows that various Defendant agencies were involved in the assessment of Ms. R.H.'s January request. On January 20, 2021, Ms. R.H.'s former counsel ("TL") sent the January request for humanitarian parole to U.S. Customs & Border Protection ("CBP"). (Dep. Ex. 44.) Ms. R.H. requested reunification with her sons, Plaintiffs J.M.R. and S.M.R., who were staying at Abbott House at the time under the custody of the U.S. Department of Health and Human Services ("HHS") / Office of Refugee Resettlement ("ORR"). (Dep. Ex. 43.) CBP personnel responded to TL, "I will reach out to our field leadership on this request." (Dep. Ex. 44 at 1.) On the same day, the ACLU[1] forwarded Ms. R.H.'s January request to the U.S. Department of Justice ("DOJ"), and DOJ personnel forwarded the request to HHS. (USA024125.) On January 22, 2021, HHS forwarded the request to the Abbott House. (*Id.*) Abbott House personnel responded that "[f]rom assessment conducted by our team, minor's [sic] stated that they did travel with mother but were separated upon crossing to the U.S." (*Id.* at 1.) Also on January 22, 2021, HHS contacted Immigration and Customs Enforcement ("ICE") / Enforcement and Removal Operations ("ERO") to "assist with obtaining information regarding" J.M.R. and S.M.R. and "information surrounding the separation of the children from their mother." (USA023890 at 4.) On February 3, 2021, TL sent the January request to personnel at the U.S. Department of Homeland Security ("DHS"). (Dep. Ex. 45.) DHS personnel proceeded to communicate with HHS/ORR "to inquire if ORR records reflected any information that would be helpful for our understanding of why [Ms. R.H.'s] children were

---

[1] Attorneys were counsel in the *Ms. L v. ICE* class action case on wrongful family separation.

determined to be UAC . . . ." (USA022645 at 4.) On February 16, 2021, the DHS personnel responded to TL, "we have elevated this case to CBP and understand that it is currently under review." (Dep. Ex. 45 at 3.) On February 24, 2021, emails between CBP personnel stated that Ms. R.H.'s humanitarian parole request "has come to the attention of leadership and is being set to appear for humanitarian reasons," and CBP anticipated Ms. R.H. to arrive the next day to "be processed under CBP's discretion for a Notice to Appear and paroled." (USA002602 at 2.)

Defendant first put forth Chief Russell Becker to testify to Topic 12, but he was unable to answer questions about Ms. R.H.'s January request. When asked "if CBP was involved in the review of Ms. R.H.'s" the January request, Mr. Becker answered, "I'm not entirely sure what the review for CBP would've been on this." (Ex. 6 at 166:5-8.) Plaintiffs then requested that Defendant designate a new witness to testify to Topic 12, to which Defendant agreed and offered Assistant Port Director Albert Barnes. Mr. Barnes was also unprepared to speak to Topic 12. He responded, "I don't know" when asked "what information was reviewed as part of the assessment, adjudication, and grant of Ms. R.H.'s humanitarian parole request?" (Ex. 4 at 62:16-19.) When asked why Ms. R.H. was "not eligible for detention" (as a basis for parole), he answered, "I don't know. We don't know what factors. I mean, we know we were kind of in the midst of a pandemic at that time, so that may have played a factor." (*Id.* at 41:16-20.) He guessed about how Ms. R.H.'s humanitarian parole was granted based on documents presented to him during the deposition. (*Id.* at 34:6-10; 36:1-5.) And Mr. Barnes was not "aware of" "anyone at DHS headquarters involved with the review of the request." (*Id.* at 30:14-18.) Neither Mr. Becker nor Mr. Barnes recognized the personnel from DHS or DOJ referenced in the above emails concerning the January request. (*See id.* at 59:13-60:21; Ex. 6 at 169:19-170:4; 171:2-10.)

Moreover, due to Defendant's production of documents relevant to Topic 12 after the 30(b)(6) depositions, Plaintiffs could not question any witness about those late documents. On the last day of fact discovery, Defendant produced over 600 files including three of the emails concerning Ms. R.H.'s January request that Plaintiffs cite in the paragraph above. Four days later, Defendant produced new documents sent to HHS and DHS personnel detailing Plaintiffs' apprehension by CBP, which is core to the January request. (USA024366; USA024368.)

### C. Redactions based on deliberative process privilege

Plaintiffs' February 3, 2026 letter objected to redactions based on the overly broad and inappropriate assertion of DPP in Defendant's January 15, 2026 privilege log. (2/3/2026 Letter at 1; *see* Ex. 7.) On February 27, 2026, the last day of fact discovery, Defendant stated that it would lift "redactions, if any, related to" "three specific areas related to the DPP redactions" but did not provide any specific timeline for production. (2/27/2026 11:13am Email.) Plaintiffs did not limit their objections to the "three specific areas." (*See* 2/20/2026 11:00am Email.) For example, DPP does not apply to any decision to grant or deny Ms. R.H.'s January request in the disputed redactions. *See F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

To date, Defendant has not produced any documents with lifted redactions or a privilege log covering all its documents produced with redactions, including those in its production of over 600 files on the last day of fact discovery. At this stage with fact discovery closed, Plaintiffs will not have time to review Defendant's forthcoming production(s), meet and confer, and raise any remaining dispute on the redactions to the Court by the cut-off date on March 6, 2026, under Civ. L. R. 37-3. Plaintiffs thus request the Court to permit Plaintiffs to raise a discovery dispute on this issue beyond the cut-off under the Local Rule and the Court's Standing Order. In addition to the specific documents identified in Plaintiffs' February 3, 2026 letter, documents in Defendant's production on the last day of fact discovery also fall within the scope of this dispute. For example, the email thread between HHS and ICE ERO referenced above regarding the Plaintiffs' separation at the border includes redactions of content likely to be relevant to disputed facts in this case. (USA023890; *see also, e.g.*, USA024125, USA24310.)

## II. DEFENDANT'S STATEMENT

### A. ROG 3 Response

A brief background on the facts relevant to this interrogatory:

On January 20, 2021, Plaintiff Ms. R.H., through counsel, requested to be paroled into the United States to be with her sons, who had previously crossed into the United States without Ms. R.H. on October 13, 2020 (Plaintiffs dispute whether Ms. R.H. was present at this encounter). While guidance would be announced in May 2025 regarding specific parole available to families

who had previously been separated, the only parole available in January 2021 was the statutory parole under Section 212(d)(5)(A) of the Immigration and Nationality Act, which covers any parole "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. 1182(d)(5). Ms. R.H. entered the United States via a port of entry on February 20, 2021 without presenting any entry document (*i.e.*, a visa). She was processed by CBP, issued a notice to appear for removal proceedings, and transferred to ICE custody. ICE paroled her the same day for medical reasons under Section 212(d)(5)(A), the only parole authority that applied to any humanitarian reason for parole. Ms. R.H.'s Form I-94 from the day of her entry reflects that humanitarian parole was issued by an ICE deportation officer. Plaintiffs have long been in possession of this document and Ms. R.H. was present at the time of parole.

On May 7, 2025, Defendant indicated that its investigation of Interrogatory No. 3 was ongoing. Plaintiffs made no objection to Defendant's response to Interrogatory No. 3 for over eight months from May 7, 2025 until January 9, 2026. Plaintiffs only raised the issue with the close of fact discovery approaching, and Defendant readily agreed to supplement the response. The supplemental response was provided shortly thereafter on February 13, 2026. The response was as follows:

> "ICE ERO made the decision to parole based on a denial of detention space due to Plaintiff Ms. R.H.'s claimed medical conditions. The decision to parole was not based on the prior request for humanitarian parole."

Plaintiffs argued that the response did not indicate whether the "application for humanitarian parole" was granted, "the factual and legal conclusions for granting the application," or "[i]dentify the individual(s) who made the decision." *See* February 20, 2026 11:00 a.m. e-mail. But these questions were focused on Ms. R.H.'s January 20, 2021 written request for parole submitted by counsel. This request was never granted or denied, as the interrogatory response already indicates. There are therefore (1) no factual or legal conclusions for granting the application, or (2) a person who made the decision to grant the January 20, 2021 application. For the first time in the draft of this joint statement, Plaintiffs indicated that they would like Defendant to supplement the response to Interrogatory No. 3 "to state: (a) which request for

humanitarian parole was granted, if not Ms. R.H.'s sole written request submitted January 20, 2021 ("January request"), (b) all factual and legal conclusions for the decision to grant parole; (c) whether "the prior request for humanitarian parole" refers to the January 20, 2021 request; and (d) if the January 20, 2021 request was granted, who made the decision to grant and the factual and legal conclusions for granting." Defendant can supplement the interrogatory response to clarify (a) that the decision to parole was made under ICE-ERO's general parole authority under Section 212(d)(5)(A) that applied to parole for any humanitarian reason, requested or not, (b) the factual reasons for the parole were a denial of detention space due to Plaintiff Ms. R.H.'s claimed medical conditions consistent with Section 212(d)(5)(A), (c) confirm that the "prior request for humanitarian parole" is the one made by counsel on January 20, 2021. No information would be applicable for (d) because the January 20, 2021 request was neither granted nor denied by ICE-ERO, who ultimately decided to parole Ms. R.H.

### B.    30(b)(6) Topic 12

Plaintiffs served a Rule 30(b)(6) notice for U.S. Customs and Border Protection Del Rio Sector containing 12 topics. Topics 1-10 were sufficiently covered by the first 30(b)(6) witness, Russell Becker, and are not in dispute. After the deposition of the first 30(b)(6) witness, Plaintiffs challenged whether Topics 11 and 12, concerning humanitarian parole generally and Ms. R.H.'s January 20, 2021 parole request specifically, were adequately addressed. Defendant disagreed that the topics were not addressed but the parties agreed that a second witness would be made available for two additional hours of testimony on Topics 11 and 12. Plaintiffs now concede that Topic 11 was adequately addressed and this dispute solely concerns Topic 12.

The second 30(b)(6) witness was prepared to testify by knowledgeable persons from CBP and ICE and testified for two hours regarding humanitarian parole generally and Ms. R.H.'s parole specifically. The second 30(b)(6) witness testified extensively regarding ICE-ERO's decision to parole Ms. R.H. Some examples include:

- Health conditions could result in ICE-ERO paroling an individual (Ex. 4, 41:7-12);
- Regarding Ms. R.H. specifically, she was issued a notice to appear and transferred to ICE-ERO for detention, who made the decision not to detain her (39:2-11);

- Ms. R.H. was paroled because she did not qualify for detention (40:20-25); and

- Ms. R.H. could be paroled separately from her January 20, 2021 parole request (41:1-6).

Plaintiffs mischaracterize the 30(b)(6) testimony by conflating the term "parole" to cover both Ms. R.H.'s January 20, 2021 specific request for parole as well as general humanitarian parole (in January and February 2021, only available under Section 212(d)(5)(A)'s catch-all humanitarian parole provision). Further, whether the 30(b)(6) witness could personally identify a handful of specific individuals is of no matter when the witness was briefed by knowledgeable individuals and answered questions on these topics for two hours as agreed. While Plaintiffs try to quibble with a few specific responses, Rule 30(b)(6) is not designed to be a "memory contest." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 150 (S.D.N.Y. 1997).

Finally, Plaintiffs observe that additional Department of Health and Human Services ("HHS") documents were produced after the second 30(b)(6) deposition of CBP took place. This does not warrant further 30(b)(6) testimony from CBP for several reasons: (1) HHS did not participate in the decision to parole by CBP and ICE, which is the subject of Topic 12; (2) the deposition of CBP did not cover any topics related to HHS; and (3) Plaintiffs have never sought a 30(b)(6) deposition of HHS.

**C.    Redactions based on deliberative process privilege**

For this item, Plaintiffs do not appear to raise an actual dispute but instead preserve their ability to raise objections to Defendant's forthcoming production of material that resulted from the parties' meet and confer. Defendant does not oppose the request to preserve Plaintiffs' ability to raise disputes regarding the forthcoming production.

Defendant produced over 24,000 pages of material during this litigation, the vast majority of which is not in dispute. During the parties' recent meet and confer, three specific areas were discussed: (a) material that postdates any decision on parole; (b) any facts that can be segregated out from the agency process portions; and (c) any information solely related to Ms. R.H.'s arrival at the port of entry. In an effort to resolve the dispute, Defendant already agreed to re-review the requested documents and remove redactions related to these three areas. The production is forthcoming.

If Plaintiffs do raise additional objections to the forthcoming production, a wholesale removal of deliberative process privilege redactions is inappropriate. As the Ninth Circuit has instructed, agency deliberations are protected from disclosure unless a party can overcome the government's interest in non-disclosure based on "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Warner Commc'ns*, 742 F.2d 1156 at 1161. The ultimate factual question in this litigation is not whether Ms. R.H.'s January 20, 2021 request for parole was granted; instead, the question is whether Plaintiffs were forcibly separated on October 13, 2020 as they claim. Plaintiffs hope that evidence related to parole will shed light on the circumstances of their alleged separation. This desire is already being addressed by Defendant's offer to remove redactions based on factual material rather than agency deliberations. Further, Plaintiffs have received over 24,000 pages of material related to their crossing into the United States, deposed six fact witnesses, and took two 30(b)(6) depositions. There is no dearth of evidence for Plaintiffs to probe the facts of the October 13, 2020 crossing, and to the extent any of the dispute redactions cover facts related to the October 13, 2020 crossing, Defendant has already agreed to remove them. This makes the availability of other evidence factor dispositive. Finally, even if Plaintiffs were challenging whether the decision to grant any parole was proper (this conduct does not form the basis of any of their damages claims), the Ninth Circuit has already held that the *Warner* framework applies even in cases where the intent of government officials is at issue. *Karnoski v. Trump*, 926 F.3d 1180 (9th Cir. 2019). At bottom, the risk of chilling effective policymaking does not outweigh Plaintiffs' interest in evidence that is tangential at best.

However, this issue is not presently before the Court, and Plaintiffs have made no specific complaint regarding the deliberative process privilege redactions other than the three categories where Defendant has already agreed to re-review and remove redactions. Defendant will provide an additional response if Plaintiffs raise any objections in response to the supplemental production.

| | | |
|---|---|---|
| 1 | DATED: March 4, 2026 | Respectfully submitted, |
| 2 | | */s/ Johnathan Chai* |
| 3 | | JOHNATHAN CHAI |
| 4 | | Counsel for Plaintiffs |
| 5 | DATED: March 4, 2026 | Respectfully submitted, |
| 6 | | CRAIG H. MISSAKIAN |
| 7 | | United States Attorney |
| 8 | | */s/ Michael A. Keough\** |
| | | MICHAEL A. KEOUGH |
| 9 | | Assistant United States Attorney |
| | | Counsel for Federal Defendant |

*\*In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.*

FENWICK & WEST LLP
ATTORNEYS AT LAW

JOINT STATEMENT REGARDING
DISCOVERY DISPUTES            11            CASE NO.: 5:23-cv-05793-EKL